## Borough of McKees Rocks v. Spartacus, Inc.

*Samuel J. Pasquarelli*, for plaintiff.

*Carl M. Janawitz* and *Rochelle S. Friedman*, for defendant.

LOUIK, *J.*, October 14, 1982—This action is currently before the court upon defendant's exceptions to a non-jury finding. An opinion has already been filed in this matter, and the factual background from which this case has arisen is already exceed-

ingly well-known; reiteration will not be necessary. It will suffice to preface that which is to follow by stating that defendant, Spartacus, Inc., is challenging our previous characterization of its "business activities" as an "amusement", as opposed to the provision of "specific personal and/or professional services." Defendant's brief details to the court the history of prostitution, and the concomitant degree of skill required on the part of those who respond to its "calling." However, the court feels compelled to deny defendant's exceptions, despite the contentions proffered therein.

Defendant initially attempts to convince the Court that prostitution, aside from any recreational value it may provide, is nonetheless a true "profession", and in fact "the oldest profession in the world." This contention brings to mind a decision rendered in another county by a court of common pleas, in which the bench astutely pointed out that ". . . calling a mouse a lion (does not make) it a lion." Polakovic v. Hospital Service Plan of Lehigh Valley, 28 Lehigh L. J. 1 (1958);we are not persuaded that the age-old attachment of the label "profession" to the activity of prostitution makes it a profession for purposes of the Borough ordinance. We again return to the pages of Black's Law Dictionary (5th Ed. 1979), in which a "profession" is defined to be that which ". . . requires special advanced education and skill." While defendant concludes that prostitution is within this narrow sphere, by reason of the various forms of "education" a prostitute receives (such as the art of coquetry, the handling of difficult clients, etc.), we believe that two important distinctions prevent this conclusion.

First, careful attention need be paid to the precise wording of the aforementioned definition; we find it

noteworthy that special training is not only helpful to the acquisition of a professional skill, but is required. We fail to see where the training outlined in defendant's brief is essential to the practice of prostitution; it is doubtful that any woman employed at the Spartacus was asked to display her sheepskin before plying her trade. In this, prostitution appears to bear a greater similarity to those trades encompassed within the ordinance "amusement" list. For example, such activities as ". . . singing, orchestra, band, and other musical performances . . ." are all held to be taxable amusements. It cannot be averred that these trades do not often involve a certain degree of study, training, and skill. Conversely, it is just as often the case that the local cabaret performer assailing one's ears has had no more schooling than what has taken place within the four walls of his shower. However, a tenor from the Metropolitan and an off-key Copa crooner are on an equal footing under the ordinance, and taxed (though with regard to the latter performance, the term "entertainment" might appear out of place). The bottom line to all this should be clear: those pursuits which are classified as mere "amusement" can involve a high degree of skill and training, but needn't — a professional service, on the other hand, requires certain specialized training if it is to be practiced at all. In this respect, the prostitute is far more akin to an "amusement"; she may be well-trained in providing pleasure, or, in the words of plaintiff's counsel, be no more well-trained than any other woman that "can breathe."

A second distinction that needs to be drawn concerns the ultimate end to be achieved in either case. With regard to those activities that are classified as "amusement", the end to be achieved is just that: amusement. It is immaterial that the activity per-

formed cannot be measured and adjudged according to any objective criteria — that the patron's individual tastes have been satisfied is sufficient fare. However, the provision of a professional service generally involves a more far-reaching goal; while the services of a doctor, dentist, or (to employ an example submitted by defense counsel) beautician can provide some degree of amusement, such amusement value is incidental at best to the core objective that is being sought (ie., the curing of illness by the doctor, the filling of cavities by the dentist, and the cutting and styling of hair by the beautician).

Additionally, the court feels its characterization of prostitution to be further buttressed by the treatment it is accorded in the only state in the United States where it is legal. An examination of the Nevada Revised Statutes uncovers the following:

"244.345 Licensing of places of amusement, entertainment, recreation: County license board; licensing houses of prostitution prohibited in certain counties.

(1) Every person, firm . . . or corporation wishing to engage in the business of conducting a . . . place of amusement, entertainment or recreation . . . shall:

(a) Make application by petition to the license board . . .

(b) File the application with the required license fee . . ."

This statute has been held to ". . . manifest a statutory licensing scheme for houses of prostitution . . ." Nye County v. Plankington, 94 Nev. 739, 587 P.2d 421, 423 (1978). Clearly, the significance of this licensing scheme cannot be ignored; if prostitution has been held to be an "amusement" in the one state where it has been legalized, we would feel con-

strained from according it a more exceptional status for purposes of this rather broad ordinance involved in the instant matters.

Defendant, in the alternative, attempts to persuade the court that prostitution is a "specific personal service."

The first rationale for our refusal to accord prostitution this exceptional status has been dealt with at length in our previous decision, and will not be repeated in detail now. However, the court is certain the parties will recall our previous discussion of legislative intent in which we referred specifically to 1 Pa. C.S.A. §1922 (1) and (5); the guidelines contained within these sections state that a legislative body neither intends an absurd result, nor would wish to favor a private interest at the expense of the public welfare. The placing of an illegal activity such as prostitution in the requested category would certainly violate these legislative guidelines.

Our holding is also grounded in the language of the ordinance. In defendant's very own definition of "personal", the phrase "directed to, or intended for a particular person" stands out; this definition is in accord with Black's Law Dictionary (5th Ed. 1979), which defines "personal" as that "belonging to an individual." However, it is our feeling that defendant is approaching these definitions on a somewhat superficial level; it seems rather clear that the Borough of McKees Rocks did not intend a tax exclusion for every one-on-one activity. Arguably, if we are to employ defendant's approach, any taxable "display" or "diversion" could be held an excepted "personal service" if performed for an audience of one; however, the Borough very specifically precludes this result by the use of such modifying language as ". . . any other type of . . . recreation, show, performance . . ., whether or not the same be concluded at any . . . beer garden, cabaret, night club

... or any other place, public or private..."
(Emphasis added.) We believe the borough intended the words "directed to, or intended for a particular person" to take on a deeper connotation. It would seem the borough contemplated the provision of a service tailored to the needs and desires of that particular person, and not a service that would merely amuse anyone by its performance alone. For example, the provision of counseling services are, of necessity, dependent upon the needs of the particular individual who is seeking help. In the case of the business activities at the Spartacus, however, this would not necessarily be true; while the sexual acts performed could be tailored to that individual's needs, it is just as likely that the customer is receiving routine services no more tailored to his individual needs than a fast-food hamburger. As pointed out by plaintiff's counsel, these encounters are, as a rule, highly impersonal; names are rarely exchanged, and the acts performed are about as responsive to individual needs as a musical performer's encore is responsive to the personal needs of each member of the audience.

Hence, the court remains unpersuaded that the prostitution at Spartacus qualifies for a tax exemption under the auspices of being a "specific personal service."

The exceptions of defendant will, therefore, be denied.

## ORDER OF COURT

And now, this October 14, 1982, it is hereby ordered, adjudged and decreed that all of the exceptions of defendant be and the same are hereby denied.